**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X,
HORACIO DAVID VELIZ MONTOYA, individually
and on behalf of others similarly situated,

                       Plaintiff,

      -against-

PREMIUM MILLWORK, INC. (D/B/A PREMIUM MILLWORK) and JULIO CUENCA,

                       Defendants.
-------------------------------------------------------------------X

**20-cv-02475**
**DECLARATION OF MICHAEL FAILLACE IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

Michael Faillace, an attorney duly admitted to practice in New York and in this Court, affirms on penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I represent Horacio David Veliz Montoya ("Plaintiff"), in this lawsuit for unpaid wages, liquidated damages, and attorneys' fees under the FLSA and New York Labor Law and regulations.

2. I submit this affirmation in support of Plaintiff's application for a default judgment against Premium Millwork Inc. (d/b/a Premium Millwork) and Julio Cuenca.

Procedural History

3. Plaintiff commenced this action by filing the Complaint ("Complaint") and associated documents on June 3, 2020. *See* Docket No. 1. ("Complaint").

4. This is an action for unpaid minimum wages, unpaid overtime wages, liquidated damages, interest, costs and attorneys' fees under the Fair Labor Standards Act (29 U.S.C. § 201 et seq., "the "FLSA") the New York Labor Law ("NYLL"), and associated rules and regulations. *See* Complaint.

5. The Court has subject matter jurisdiction of the Plaintiff's federal claims pursuant to 29 U.S.C. § 201 *et seq.* (FLSA) and 28 U.S.C. § 1331 (federal question), and jurisdiction over the New York state law claims (such as the NYLL) under 28 U.S.C. § 1367(a) (supplemental jurisdiction). *See* Complaint.

6. A summons and copy of the Complaint was properly served on defendant Premium Millwork Inc. on August 24, 2020. A copy of the Affidavit of Service on defendant Premium Millwork Inc. is attached hereto as Exhibit 1.

7. A summons and copy of the Complaint were properly served on defendant Julio Cuenca on January 25, 2021. A copy of the Affidavit of Service on defendant Julio Cuenca is attached hereto as Exhibit 2.

8. Upon information and belief, Premium Millwork Inc., being a corporation organized and existing under the laws of the State of New York, and Julio Cuenca are neither infants nor incompetent persons nor in the active service of the United States military.

9. Plaintiff moved for entry of default on April 20, 2021. The Clerk of the Court then noted default against Defaulting Defendants on April 26, 2021. True and correct copies of the Clerk's Certificates of Default are attached hereto as Exhibit 3.

10. The declaration of Horacio David Veliz Montoya (Plaintiff Dec.) in support of this motion for default judgment is annexed as Exhibit 4.

Statement of Facts Supporting Entry of Judgment

11. As alleged in the Complaint and as stated in Plaintiff's affidavit, Defendants. own(ed), operate(d), and control(led) a woodworking shop located at 55 Coffey Street, Brooklyn, NY 11231, under the name Premium Millwork.

12. Plaintiff is former employee of Defendants. (Complaint ¶ 4, Plaintiff Dec. ¶ 3).

13. Defendants had the power to hire and fire Plaintiff, controlled Plaintiff's terms and conditions of employment, and determined the rate and method of Plaintiff's compensation. (Complaint ¶ 18; Plaintiff Dec. ¶ 4).

14. Upon information and belief, Defendants had a gross annual volume of sales of over $500,000.00. (Complaint ¶ 27).

15. Upon information and belief, Defendants were directly involved in interstate commerce. (Complaint ¶ 9).

16. Defendants regularly required Plaintiff to work without paying him overtime. (Complaint ¶ 28; Plaintiff Dec. ¶ 17).

## Horacio David Veliz Montoya

17. Plaintiff was employed by Defendant as a carpenter's assistant from approximately July 2018 until on or about October 28, 2019. (Plaintiff Dec. ¶ 6.)

18. Plaintiff's work did not require discretion or independent judgment. (Plaintiff Dec. ¶ 9).

19. Throughout Plaintiff's employment, he worked from approximately 7:00 A.M. until 6:00 p.m.., five day per week and from approximately 7:00 a.m. until 4:00 p.m, one day per week. He thus worked approximately 60.5 hours per week. (Plaintiff Dec. ¶ 10).

20. Throughout Plaintiff' entire employment, Defendant paid him his wages by personal check (Plaintiff Dec.¶ 11).

21. From July 2018 until approximately December 2018, Plaintiff was paid a fixed salary of $920.00 per week. (Plaintiff Dec. ¶ 12).

22. From approximately January 2019 until the end of his employment, Plaintiff was paid a fixed salary of $1,000.00 per week. (Plaintiff Dec. ¶13).

3

23. Plaintiff was never required to keep track of his time. Defendants never used any kind of time tracking system. (Plaintiff Dec. ¶ 14).

24. Defendants did not provide Plaintiff with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked. (Plaintiff Dec. ¶ 15).

25. Defendants did not provide Plaintiff with any written notice of his rate of pay, his employer's regular pay day and other information required by NYLL §195(1). (Plaintiff Dec. ¶ 15).

### Plaintiff is entitled to Judgment by Default

26. It is well settled that Defendants who fail to file an answer or otherwise move in respect to a complaint filed, are deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006) ("Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party") (citation omitted).

27. Defendants have failed to file an answer or otherwise respond to the second amended Complaint, despite the time to do so have expired.

28. Thus, Plaintiff's allegations are unchallenged, and consequently the Complaint and declarations attached hereto establish Plaintiff's right to default judgment.

29. Upon entry of a default, the court may award damages based upon evidence submitted through affidavits and exhibits, or by an evidentiary hearing. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012). "While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory." Id. "Together, 'Rule 55(b)(2) and relevant

case law give district judges much discretion in determining when it is "necessary and proper" to hold an inquest on damages.'" Id. (quoting <u>Tamarin v. Adam Caterers, Inc.,</u> 13 F.3d 51, 54 (2d Cir. 1993)).

30. Plaintiff maintains that the proof submitted herewith is sufficient on its own to obviate the need for a hearing on damages. Based on the evidence Plaintiff has put forward, damages, including back pay, liquidated damages, and prejudgment interest, should be awarded in the amount of $133,810.61, and attorneys' fees and costs should be awarded in the amount of $7,847.50

Plaintiff's Damages Calculation

31. Annexed as <u>Exhibit 5</u> is a chart setting out the damages Plaintiff is entitled to recover.

32. In the damages chart, the Plaintiff's wage and hour damages are based on his calculations as set forth in his Declaration.

33. The legal basis for the damages calculations within the chart are set out below.

Back Pay

34. In the damages chart, the Plaintiff's wage and hour damages (including overtime wage damages, spread of hours wage damages, liquidated damages, and interest) are calculated in segments of time, broken into "Pay Periods." Each pay period calculates the number of weeks in each period ("No. of Weeks in Pay Period"), and then based upon each of the Plaintiff's affidavits, lists the number of hours worked per week in each period ("Hours Per Week in Period). The applicable minimum wage data, and associated overtime rate, are included as applicable for each pay period. Then there is a column for Paid Wages, the first column calculates the "regular rate of pay" for each period by dividing the amount actually paid each week to each Plaintiff (the

5

"Credited Weekly Pay") for each period, then dividing that amount by forty[1]. The overtime rate is calculated using a 1.5 multiplier for time and a half overtime calculation later in the chart. The "Credited Weekly Pay" is the amount of money actually paid and is based upon the Plaintiff's affidavits. The information the number of days each week in that period for which the Plaintiffs worked in excess of 10 hours per day is also included, and was therefore entitled to Spread of Hours Pay ("No. of SOH Days Per Wk in Period").

35. Calculations within the Chart – The "Lawful Weekly Pay" column of the chart calculates what the Plaintiffs should have been paid per week during each pay period. The actual formula used in this column is as follows:( (greater of minimum wage or calculated base pay) * Hours Per Week up to 40) + ((greater time and a half rate) * (Hours Per Week over forty, if any)).

36. The chart therefore automatically determines whether the effective calculated base rate of pay falls below the minimum wage, and if it does, it discards it. If it does not, it uses it for the subsequent calculations (as the Plaintiffs are entitled to earn at least the minimum wage). The chart then automatically calculates what the hours should have been compensated at under the base rate of pay up to the first 40 hours of work per week, and then at time-and-a-half pay for any hours over 40. The Chart then subtracts the amount actually paid to the Plaintiffs (the "Credited Weekly Pay") and then derives the "Underpayment per Week." This number is then multiplied by the number of weeks in each period and derives the total damages due for unpaid minimum wages and overtime for each period ("Unpaid Wages & OT"). The Chart then applies the liquidated damages

---

[1] There is a rebuttable presumption under the FLSA that a weekly salary is intended to cover a forty-hour workweek. Berrios v Nicholas Zito Racing Stable, Inc., 849 F Supp 2d 372, 385 (EDNY 2012) quoting Jiao v Chen, 2007 US Dist LEXIS 96480, at *45 (SDNY 2007). The defendants have not appeared to rebut this presumption.

provisions of the NYLL to the "Unpaid Wages and OT" automatically in the "Liq. Damages on Wages & OT" by 100%.

### Three Year Statute of Limitations Under FLSA

37. Under the FLSA, when the underpayment by the employer is willful, the limitations period increases from two (2) to three (3) years. 29 U.S.C. § 255(a).

38. Willfulness under the FLSA means the employer "knew or showed reckless disregard for the matter of whether [the employer's] conduct was prohibited by the statute," McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); Damassia v. Duane Reade, Inc., 2005 U.S. Dist. LEXIS 9768 at *5 (S.D.N.Y. May 20, 2005) (willfulness was properly pleaded by alleging, inter alia, that the employer was "aware of the existence of the FLSA and its overtime requirements."). Willfulness is also established when an employer fails to investigate whether its compensation policy was legal. See Hardrick v. Airway Freights Systems, Inc., 63 F. Supp. 2d 898, 904 (N.D.Ill. 1999); v. IBP, Inc., 339 F.3d 894, 909 (9th Cir. 2003), aff'd, 126 S.Ct. 514 (2005) (upholding the three-year statute of limitations because employer was on notice of FLSA requirements but "took no affirmative action to assure compliance" with them).

39. In the present matter, Defendants were aware, or should have been aware, of the existence of the FLSA and its overtime requirements. However, the Defaulting Defendants knew or disregarded the fact that their conduct was prohibited by the FLSA. Furthermore, even if the Defaulting Defendants did not know of the FLSA, the Defendants' actions are still willful because the Defaulting Defendants failed to investigate whether their compensation policy was legal. See Hardrick, 63 F. Supp. 2d at 904.

40. Moreover, the Defendants failed to post the required information concerning the minimum wage laws, paid the Plaintiff in cash, and had no system for recording, or even having Plaintiff record, his hours.

41. This deliberate decision to disregard both FLSA and New York law, as well as Defendant' failure to take any affirmative step towards compliance, amount to willfulness for purposes of the FLSA and New York law. <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005)("A failure to pay is 'willful' when the employer knowingly, deliberately, or voluntarily disregards its obligation to pay wages") (internal quotations omitted).

42. As Plaintiff can establish that Defendants' violation of the FLSA was willful, they are entitled to a three-year limitations period under the FLSA, i.e., starting from June 3, 2020, three years before the complaint was filed. See, e.g., <u>Decraene v. Neuhaus (U.S.A.), Inc.</u>, 2005 U.S. Dist. LEXIS 10836 at *23-*24 (S.D.N.Y. 2005). Furthermore, under the New York Labor Law and regulations, the limitations period is six years, regardless of willfulness. N.Y. Labor Law § 663(3). Causes of action under the New York Labor Law accrue in the same manner as do causes of action under the FLSA. See <u>Godlewska v. Human Dev. Assoc., Inc.</u>, 2006 U.S. Dist. LEXIS 30519 at *12 (E.D.N.Y. May 18, 2006). Therefore, back pay under the New York Labor Law should be calculated from the start of Plaintiff's employment, which was less than six years from the filing date.

<u>Wage Notice and Statement Violations</u>

43. Defendants never provided Plaintiff with annual notices of their wages, or a wage statement, as required by NYLL §§ 195(1), 195(3).

44. Plaintiff is therefore entitled to statutory damages in the maximum amount of $5,000 under each section, for a total of $10,000.00.

### Liquidated Damages

45. Liquidated damages of 100% of the unpaid wages under the FLSA are mandatory. See 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). The employer can make this award discretionary, however, by a showing of good faith. 29 U.S.C. § 260. In the present matter, the Defaulting Defendants have defaulted. Consequently, they cannot meet this burden, and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. 29 U.S.C. § 216(b).

46. Likewise, under the NYLL, "an employee is also entitled to liquidated damages 'equal to one hundred percent of the total of such underpayments found to be due,' unless the employer proves a good faith basis for believing he or she was in compliance with the law." Wei, 2014 U.S. Dist. LEXIS 182325, *23 (quoting N.Y. Lab. Law § 663(1)).

47. Given the uncontroverted evidence of Defaulting Defendant' lack of good faith Plaintiff is entitled by statute to liquidated damages under the New York Labor Law, computed at 25% of the unpaid minimum and overtime wages for the period of time prior to April 9, 2011 and 100% for any subsequent unpaid minimum and overtime wages.

48. Plaintiff's total unpaid wages equal $51,444.75, all incurred after April 9th, 2011. Thus, he is entitled to 100% liquidated damages in the amount of $51,444.75. See Exhibit 5.

### Attorneys' Fees and Costs

49. The FLSA and the New York Labor Law both contain fee-shifting provisions for actions to recover unpaid wages. 29 U.S.C. § 216(b) ("The court in such action shall, in addition

9

to any judgment awarded to the Plaintiff or Plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); N.Y. Labor Law § 663(1) ("[An employee] may recover . . . costs and such reasonable attorney's fees as may be allowed by the court").

50. Plaintiff incurred costs and attorneys' fees in pursuing this action, and seeks an award of reasonable attorney's fees and costs.

51. The costs are a total of $625.00, including a filing fee of $400.00 and fees associated with serving the Defendants with the summons and complaint.

52. A breakdown of attorneys' fees and costs incurred in filing the Complaint and seeking default, in the form of this firm's standard billing sheet is attached hereto as <u>Exhibit 6</u>.

53. The timekeepers on this matter are indicated by the following initials and have the following rates:

   a. "MF" — Michael Faillace, $450 per hour
   b. "CE" – Clela Errington - $350 per hour
   c. "PL" – Paralegal work, $100 per hour

A brief biography of each attorney who performed billed work in this matter is as follows:

   i. Michael Faillace is the Managing Member of Michael Faillace & Associates, P.C, and has been in practice since 1983. From 1983 to 2000, he was in-house Employment Counsel with International Business Machines Corporation (IBM). He taught employment discrimination as an Adjunct Professor at Fordham University School of Law since 1992 and at Seton Hall University Law School from 1995 to 1998, and he is a nationally-renowned speaker and writer on employment law. He also is the author of the ADA, Disability Law Deskbook: The Americans with Disabilities Act in the Workplace,

        published by Practicing Law Institute (PLI), and other employment law publications and presentations. .

    ii.    Clela A. Errington is an associate at Michael Faillace & Associates, P.C. She is a 2012 graduate of New York University School of Law. She began her career at a series of small law firms focusing on labor and employment law, followed by several years providing litigation support to large law firms. She returned to litigation in 2019, joining the Jones Law Firm, P.C., and joined Michael Faillace & Associates in 2020.

Conclusion

54.    Based on the above information and exhibits, Plaintiff asserts the record supports a judgment against the Defendant in favor of Plaintiff in the total amount of $133,810.61 for unpaid wages, notice and recordkeeping violations, liquidated damages, prejudgment interest and other claims. Prejudgment interest continues to run and should ultimately be computed through the date judgment is entered.

55.    Additionally, Plaintiff is entitled to $7,847.50 in attorneys' fees and costs.  See Exhibit 6.

56.    As shown herein, no inquest is necessary when, as in the present case, the Court has before it the proper measure of damages and evidence submitted by the Plaintiff that allows damages to be calculated with reasonable certainty.

57.    No part of the judgment sought has been paid.

58.    Sufficient definitive information and documentation is provided such that the amount provided for in the proposed judgment can be calculated, based upon allegations contained in the Complaint, and supplemented by the Plaintiff's affidavit accompanying these motion papers.

59. Plaintiff also makes a request for interest on the principal amount of the judgment not to exceed 9%, as stated above and in the damages calculations.

60. Plaintiff also requests that the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4).

61. The calculations made in arriving at the proposed judgment amount are set forth in both the explanation above, and in the damages chart itself.

62. A proposed form of judgment is attached as <u>Exhibit 7</u>.

63. For the reasons stated above and in the accompanying exhibits, the Plaintiff's motion for a default judgment should be granted.

Dated: New York, New York
April 27, 2021

                                                                              /s/Michael Faillace
                                                                              Michael Faillace, Esq.